IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3011-FL

| | |
|---|---|
| GEORGE HENRY MOORE, JR., | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| CALVIN DANIELS, JASON EVANS, and JAMES DUNLOW, | ) |
| Defendants. | ) |

The matter comes before the court on the parties' cross-motions for motion for summary judgment (DE 31, 37) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

**STATEMENT OF THE CASE**

On January 12, 2015, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against defendants Assistant Unit Manager Calvin Daniels ("Daniels"), Jason Evans ("Evans"), and James Dunlow ("Dunlow"). Plaintiff alleged that defendants violated his rights pursuant to the Eighth Amendment to the United States Constitution when they failed to protect plaintiff from the possibility of inmate-on-inmate violence, wrongfully disciplined him, and then demoted him to intensive control ("ICON") custody status. Plaintiff also alleged that defendants violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution when they placed him on ICON custody status. Plaintiff subsequently

filed a motion to appoint counsel. On June 22, 2015, the court denied plaintiff's motion to appoint counsel, but allowed plaintiff to proceed with this action. Plaintiff then filed second and third motions to appoint counsel, which the court also denied.

On June 28, 2016, defendants filed the instant motion for summary judgment arguing that plaintiff's action against defendant Dunlow should be dismissed without prejudice for failure to exhaust administrative remedies prior to filing this action. Defendants argue that the remainder of the action should be dismissed because plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. As part of their motion, defendants filed a statement of material facts as well as an appendix which consisted of defendants' respective responses to plaintiff's first set of interrogatories and defendants' responses to plaintiff's request for production of documents. The motion was fully briefed. On July 22, 2016, plaintiff filed the instant cross-motion for summary judgment. Plaintiff additionally filed a personal affidavit and statement of material facts. The motion was fully briefed. On the same date, plaintiff filed a fourth motion to appoint counsel, which the court denied.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows. On November 11, 2014, plaintiff, an inmate housed in regular population on the green unit at Bertie Correctional Institution ("Bertie"), submitted a request for protective housing. (DE 33, Ex. 4, p. 6). Plaintiff provided the following statement in support of his request: "During the last few months I have been having problems in the cell block with inmates extorting money from me. I just decided that I did not want to keep giving my money away to gang members." (Id., Ex. 4, pp. 7-8). In response to his request, plaintiff immediately was transferred to administrative segregation on the red unit so that staff could

2

complete a control investigation into plaintiff's allegations that he was in danger if he remained in regular population. (Compl. ¶ IV; DE 33, Ex. 1, p. 3; Ex. 4, p. 66).

Approximately two weeks later and after further investigation, Bertie staff determined that there was no evidence to support a finding that plaintiff required protective housing because plaintiff "did not give any names up who he said was extorting money from him."[1] (DE 33 Ex. 4, p. 66). The investigation further revealed that plaintiff had made a similar unsubstantiated request for protective custody at Hyde Correctional Institution ("Hyde") in 2013. (Id.) At the conclusion of the investigation, defendant Daniels approached plaintiff and asked plaintiff if he intended to return to regular population. (Id.) Plaintiff responded that he did not intend to return to regular population. (Id.) Daniels then "authorized" defendant Evans to give plaintiff a direct order to return to regular population on November 24, 2014. (Id.) Plaintiff refused defendant Evans' order, and was charged with a C-03 disciplinary offense for refusing to obey a direct order. (DE 33, Ex. 4, p. 14). The statement plaintiff provided in the course of the disciplinary investigation provides in pertinent part:

> [I] felt that my life was in danger and that I would like to be placed on protective custody. For about a few months I have been having problems with inmates in my cell-block that I suspected were gang-members that have been extorting canteen items from me. When I would go outside to the recreation yard, hygiene and canteen items would be stolen from my room. I was told that it was a form of rent. I complied due to eye[]witnessing numerous instances of inmates getting physically abused by a group of inmates in which I did not want any retaliation. I feel that there is very poor security here a[t] Bertie. So, I decided to place myself on protective custody. . . . I was not spoken to by any staff here at Bertie concerning my custody

---

[1] The court notes that the only specific security issue plaintiff discusses involved an incident that occurred while plaintiff was in protective custody on December 9, 2014. (Compl. p. 6). In particular, plaintiff asserts that he "eyewitnessed (sic) a breakdown in security" on that date when the control office simultaneously opened two cell doors on the unit while an inmate wearing handcuffs was being led by a correctional officer from the shower area back to the inmate's cell. (Id.) By plaintiff's own account, the inmates in the open cells remained inside their cells when the doors opened, and the inmate being escorted was unharmed. (Id.)

3

status until I was given a direct order to return back to the regular population by [] Evans. I was not given the proper document to sign that would release me back into the regular population if I felt that I was no longer in danger.

(Id. pp. 8-10). Plaintiff subsequently pleaded guilty to the C-03 offense and was sentenced to the following: 15 days segregation; 10 days loss of good-time credit; 20 hours of extra duty; 30 days suspension of privileges; and one month of limited draw. (Id. p. 14).

On December 3, 2014, defendant Dunlow gave plaintiff a second direct order to leave protective custody and to return to regular population. (Compl. ¶ IV). Plaintiff again refused, and was charged with a second C-03 disciplinary offense for refusing to obey a direct order. ((DE 33), Ex. 4, p. 26). Plaintiff declined to provide a written statement after receiving the second C-03 disciplinary charge. (Id.) On December 10, 2014, the disciplinary hearing officer ("DHO") conducted a hearing on plaintiff's C-03 charge and provided the following summary:

> Inmate Moore states that he was never given a direct order, but was ask if he wanted to return to regular population. Inmate Moore writes that Mr. Dunlow approached his cell and ask if he was going to regular population and he refused, therefore he did not refuse a direct order. In the [']for accused inmate use only['] section, inmate Moore checked [']no['] for written statements and did not check [']yes['] or [']no['] for live witnesses.
>
> Inmate Moore checked [']yes['] for physical evidence and stated during the hearing that he wanted the facility control investigation reviewed during the hearin[g]. The DHO denied the request due to relevance and inmate Moore stating during the hearing that he did not provide any information for the facility to investigate.
>
> Inmate Moore checked [']yes['] for staff assistance. Based on the reporting party's statement and the investigating officer's report, inmate Moore is found guilty of the C03 offense.

4

(Id. p. 30). As a result of the second C-03 disciplinary conviction, the DHO sentenced plaintiff to the following: 30 days of segregation; 20 days loss of good-time credit; 30 hours of extra duty; 60 days of suspension of privileges; and two months of limited draw. (DE 33 Ex. 4, p. 28).

Before receiving the two C-03 disciplinary convictions, plaintiff had been infraction free for approximately 18 months. (Compl. p. 7). Plaintiff estimates that he would have been promoted to medium custody if he had not received the two disciplinary convictions. (Id.) Instead, after receiving the infractions, plaintiff was provided notice by the Facility Classification Committee ("FCC"), on January 9, 2015, that it agreed with a recommendation that plaintiff be placed on ICON status due to his refusal to return to regular population. (DE 33, Ex. 4, p. 31). The Director's Classification Committee ("DCC"), additionally, notified plaintiff that it would conduct a hearing on January 8, 2015, to determine whether plaintiff should be placed on ICON status for a period of six months for his refusal to return to regular population. (Id. p. 32). Plaintiff ultimately was released from ICON status on June 2, 2015. (Id. p. 34).

In the interim, plaintiff filed a grievance, on November 24, 2014, complaining that he was having trouble with presumed gang members at Bertie stealing canteen items from his cell and requested a transfer from Bertie. (Compl., Attach. p. 4). On December 12, 2014, the Inmate Grievance Review Board responded in pertinent part: "A control investigation was completed and you were written up for your refusal to return to regular population housing. Due to your unwillingness to provide any inmates or pertinent information in regards to your control investigation protective housing was not found necessary." (Id. p. 5). The Inmate Grievance Review Board then denied plaintiff's grievance at the steps II and III level of review. (Id. pp. 5-6).

5

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

B.  Analysis

1.  Exhaustion of Administrative Remedies

Defendant Dunlow raises the affirmative defense that plaintiff failed to exhaust his administrative remedies for his action against defendant Dunlow prior to filing this action. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83-85

(2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The North Carolina Department of Public Safety ("DPS") has a three-step administrative remedy procedure which governs the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The DPS's Administrative Remedy Procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. DPS ARP § .0301(a). If informal resolution is unsuccessful, the DPS ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. Id. § .0310(a). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head. Id. § .0310(b)(1). If the inmate is not satisfied with the decision reached by the Facility Head, he may appeal his grievance to the Secretary of Correction through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the Inmate Grievance Examiner or a modification by the Secretary of Correction shall constitute the final step of the ARP. Id. § .0310(c)(6). An inmate's administrative remedy request may be rejected at any

7

level of the process if the request fails to meet any requirement set forth in § .0306(a),(b). "The inmate who submits the grievance will be notified of acceptance or rejection in writing upon the appropriate form, within three days after submission of the grievance." § .0307(b).

Here, the record reflects that plaintiff submitted only one grievance related to the instant action, which was dated November 24, 2014. (Compl. ¶ 2 and Attach. p. 4). The incident involving defendant Dunlow did not occur until December 3, 2014, which was after the date plaintiff filed his November 24, 2014, grievance. ((DE 33) Ex. 4, p. 26). Plaintiff does not contest defendant Dunlow's representation that plaintiff did not grieve the December 3, 2014, incident. Thus, plaintiff's action against defendant Dunlow is DISMISSED without prejudice for failure to exhaust administrative remedies.[2]

2.   Constitutional Claims

Defendants Daniels and Evans raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff has demonstrated a constitutional violation.

    a.   Eighth Amendment Failure to Protect

---

[2] For the same reasons set forth below, plaintiff's claims against defendant Dunlow, alternatively, is dismissed on the merits.

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014); Price v. Sasser, 65 F.3d 342, 345 (4th Cir. 1995); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). To avoid summary judgment on this claim, plaintiff must show that a reasonable jury could find that defendants knew of and disregarded an excessive risk to his health or safety. See Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347; Holden v. Hirner, 663 F.3d 336, 341–42 (8th Cir. 2011); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam). Mere negligence is not enough. Farmer, 511 U.S. at 838. Moreover, a prison "official's failure to alleviate a significant risk of harm to an inmate that the official "should have perceived but did not" does not violate the Eighth Amendment. See Farmer, 511 U.S. at 838.

Here, plaintiff has failed to make the requisite showing. In particular, the record reflects that plaintiff was immediately transferred to protective custody when he reported security concerns. (DE 33, Ex. 4, p. 6). Plaintiff, however, refused to then provide Bertie staff with any specific information regarding his safety concerns in order to justify continued placement in protective housing. (See DE 33, Ex. 4, pp. 24, 26, 66; Ex. 1, ¶ 9; Ex. 2, ¶ 4). Aside from plaintiff's contention that he was "harassed by extortion" by unidentified gang members, plaintiff, likewise, has not provided the court with any specific factual allegations or evidence to reflect any specific threat to his safety. (Compl. p. 6). Plaintiff's conclusory allegations regarding defendants' alleged deliberate indifference to threats or harassment from unidentified "presumed" gang-members are not sufficient to establish an Eighth Amendment claim. See Felty v. Graves-Humphreys Co, 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

9

Based upon the foregoing, the court finds that there is no evidence in the record that defendants acted with deliberate indifference to a specific threat or a specific known risk of harm to plaintiff. Additionally, there is no evidence that plaintiff suffered any injury as a result of defendants' alleged conduct. Because plaintiff alleged no more than a general threat to his safety, which prison officials investigated, the court cannot find that defendants acted with deliberate indifference. Rather, at most, it could be argued that defendants acted with negligence, which is not sufficient to state a constitutional violation. See Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991). Thus, plaintiff failed to establish a constitutional violation, and defendants are entitled to qualified immunity for this claim. Because defendants are entitled to qualified immunity, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

b.  Placement on ICON Status

Plaintiff asserts that his rights pursuant to the Eighth Amendment were violated when he was placed on ICON status and lost privileges. Inmates do not have the constitutional right to be incarcerated in any particular prison, jail, or confinement facility of any particular security level. See, e.g., Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). Plaintiff, likewise, does not have a liberty interest in earning future good-time credits at a particular rate, or in other privileges such as the canteen or visitation. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (concluding that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights least compatible with incarceration"); see also, Mills v. Holmes, 95 F. Supp. 3d. 924, 935 (E.D. Va. 2015) (observing that Virginia "[i]nmates have no protected liberty interest in remaining in or being assigned to a

particular good conduct allowance level . . . .") (quoting West v. Angelone, No. 98-6858,1998 WL 746138, at *1 (4th Cir. Oct. 26, 1998)); Bennett v. Cannon, No. 2:05–2634–GRA, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("There is simply no freestanding constitutional right to canteen privileges at all"). Thus, plaintiff has failed to establish a constitutional violation, and defendants are entitled to qualified immunity. Because defendants are entitled to qualified immunity, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

      c.    Wrongful Disciplinary Conviction

To the extent plaintiff contends that prison officials pursued false disciplinary charges against him, plaintiff may not proceed with such a claim at this time. In order to recover damages for an allegedly unconstitutional conviction, a plaintiff, proceeding pursuant to § 1983 must prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-487 (1994). The holding in Heck also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). Here, plaintiff's disciplinary convictions have not been invalidated.[3] Thus, because plaintiff is unable to meet Heck's requirements, defendants Daniels and Evans are entitled to qualified immunity for this claim. Because defendants are entitled to qualified

---

[3] The court notes that plaintiff has not alleged any procedural due process violation in connection with his disciplinary proceedings as provided for in Wolff v. McDonnell, 418 U.S. 539, 564-571(1974). As for the substantive due process requirement of "some evidence" to support a disciplinary conviction, such requirement has been satisfied because plaintiff admits that he refused to obey the orders to return to regular population. (See Compl. ¶ 4).

11

immunity, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

      3.      Due Process Claim

To the extent plaintiff asserts a due process claim in connection with the ICON classification process, his claim lacks merit. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In order to demonstrate a liberty interest meriting procedural due process protections, an inmate must show "(1) denial of an interest that can arise either from the Constitution itself or from state laws or policies," and that (2) this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) (internal quotations omitted); Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2015); Sandin, 515 U.S. at 484; see Wilkinson, 545 U.S. at 221-222. Here, the parties do not dispute that a procedure exists which creates a liberty interest in avoiding onerous or restrictive confinement standards. (DE 33, Ex. 4, pp. 31-39). As a result, the court focuses its inquiry on whether the challenged conditions "present atypical and significant hardship in relation to the ordinary incidents of prison life." Incumaa, 791 F.3d at 527.

Recently, the Fourth Circuit Court of Appeals provided guidance in evaluating prison conditions in the context of the test set forth in Sandin. Incumaa, 791 F.3d at 527. Specifically, the court in Incumaa stated:

> Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily ... fact specific" comparative exercise. Beverati v. Smith, 120 F.3d 500, 502, 503 (4th Cir. 1997); accord Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors ... requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). In [Prieto v. Clarke, 780 F.3d 245, 249 (4th Cir. 2015)], we recognized that the Sandin standard contains two parts. Cf. Prieto, 780 F.3d at 253–54. First, we determine what the normative "baseline" is: what constitutes the "ordinary incidents of prison life" for this particular inmate? Id. at 253 ("What the inmates in Beverati could expect to experience and what Prieto can expect to experience differ significantly. . . . For conditions dictated by a prisoner's conviction and sentence are the conditions constituting the 'ordinary incidents of prison life' for that prisoner.") Then, with the baseline established, we determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. See id. at 254 (holding that Prieto's death row confinement did not impose atypical and significant hardship in relation to the ordinary incidents of prison life).

Id.

Here, plaintiff has not alleged that he experienced any atypical or harsh conditions while on ICON status. Accordingly, the court concludes that plaintiff's conditions on ICON were not so atypical as to create a liberty interest meriting procedural due process protection. Further, as this court previously determined in Paylor v. Lewis, No. 5:12-CT-3103-FL, 2016 WL 1092612 (E.D.N.C. Mar. 21, 2016), DPS's policies and process of review for control status changes do not violate the Fourteenth Amendment. Id. at *15. Plaintiff has not submitted any evidence to the contrary. Thus, plaintiff failed to establish a constitutional violation and defendants are entitled to

13

qualified immunity. Because the court has determined that defendants are entitled to qualified immunity, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (DE 31) is GRANTED. Plaintiff's action against defendant Dunlow is DISMISSED without prejudice for failure to exhaust administrative remedies. The remainder of plaintiff's action is DISMISSED on the merits. Plaintiff's cross-motion for summary judgment (DE 37) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of February, 2017.

LOUISE W. FLANAGAN
United States District Judge